IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DANIEL GENE ELLIS,

        Plaintiff,                             No. CV-10-6253-HZ

       v.

MICHAEL J. ASTRUE, Commissioner,            OPINION & ORDER
Social Security Administration,

        Defendant.

Kathryn Tassinari
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401

       Attorney for Plaintiff

///
///
///
///
///
///

1 - OPINION & ORDER

Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon
Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Kathy Reif
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900
Seattle, Washington 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff Daniel Ellis ("Ellis") brings this action for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. I have jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). For the following reasons, I REVERSE and REMAND the Commissioner's decision for further proceedings.

## BACKGROUND

      Born in 1961 (Tr. 96), Ellis has a general equivalency degree (Tr. 136) and reports past work as a logger, heavy equipment repair person, and welder. Tr. 130. Ellis initially alleged disability since October 7, 2007, due to bipolar disorder, diabetes, lumbar strain, spinal sclerosis, sciatica, and "possible learning disability." Tr. 129.

      The Commissioner denied Ellis' applications initially and upon reconsideration (Tr. 58-64), and an Administrative Law Judge ("ALJ") held a hearing on January 6, 2010. Tr. 35-57. The ALJ

found Ellis not disabled on January 25, 2010. Tr. 10-23. The Appeals Council declined review of the matter on June 18, 2010, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In making a disability determination, the Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 404.1520(e); Social

Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work, or that the claimant has no past relevant work, the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. Yuckert, 482 U.S. at 142; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f). If the claimant cannot perform such work, he is disabled. Id.

The initial burden of establishing disability rests upon the claimant. Tackett, 180 F.3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 404.1520(g).

## THE ALJ'S DECISION

The ALJ found Ellis' adjustment disorder with depression, bipolar I disorder, personality disorder, diabetes, lumbar strain, and "status post cervical fusion" "severe" at step two in the sequential proceedings. Tr. 13. The ALJ found that these impairments did not meet or equal a disorder listed in the Commissioner's regulations at step three, and assessed Ellis' RFC:

> [T]he claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk two hours in an eight hour workday, and sit six hours in an eight hour workday. He requires the option to change his position from sitting to standing every 15 to 30 minutes. The claimant is precluded from climbing ladders, ropes and scaffolds. He can occasionally reach

    overhead, stoop, crouch, and crawl.  He should have no more than
    occasional contact with the public and coworkers.  He should not be
    required to work in a team.  Tr. 14.

The ALJ found that this RFC did not allow Ellis to perform his past relevant work (Tr. 21), but found that Ellis could perform work in the national economy at step five. Tr. 22.  The ALJ therefore found Ellis not disabled under the Commissioner's regulations.  Tr. 23.

## STANDARD OF REVIEW

  The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r for Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of the Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

  This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)).  The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193.  However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

5 - OPINION & ORDER

**DISCUSSION**

Ellis asserts that the ALJ erroneously assessed (1) his credibility; (2) the opinions of an examining and a reviewing physician; and (3) the lay witness testimony. Ellis consequently claims the ALJ should have found him disabled at step five of the sequential proceedings.

**I.   Credibility**

Ellis asserts that the ALJ erroneously evaluated his testimony. Pl.'s Opening Br. 19-20.

**A.   Credibility Standards**

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 404.1529(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter, 504 F.3d at 1036 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)(en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not

substantiated affirmatively by objective medical evidence." Robbins, 466 F.3d at 883; see also Bunnell, 947 F.2d at 346-47.

### B.     Analysis

The ALJ recited Ellis' written and hearing testimony in detail (Tr. 15, 20), and discussed factors pertaining to Ellis' credibility at several instances in the analysis accompanying his RFC assessment. Tr. 14-21. This analysis cited Ellis' activities of daily living, inconsistent statements, failure to seek treatment, and receipt of unemployment benefits. Tr. 16-21. Ellis challenges the ALJ's findings pertaining to each of these. Pl.'s Opening Br. 14-16.

#### 1.      Activities of Daily Living

The ALJ noted Ellis' own reports of his activities of daily living submitted as part of his DIB application (Tr. 15), and his reports to examining psychologist James Wahl, Ph.D. Tr. 19. Here the ALJ cited Ellis' report that he could attend to his personal care, perform household chores such as laundry and preparing simple meals, and shop for essentials every three days. Tr. 15. The ALJ also cited Ellis' report that he could shop, barbecue, clean his house for hours, bow hunt, and care for two dogs and two horses (including hauling hay to the horses). Tr. 19. The ALJ concluded that Ellis' daily activities supported a finding that he was not credible. Tr. 21.

The ALJ may cite a claimant's activities of daily living in his credibility analysis, Smolen, 80 F.3d at 1284, and may cite such activities in finding them inconsistent with a claimant's allegation of total disability. Batson, 359 F.3d at 1196. The record reflects the ALJ's findings regarding Ellis' reports of his daily activities. Tr. 117-24, 263. This court must defer to an ALJ's interpretation of a claimant's daily activities, even where other interpretations more favorable to the claimant may arise. Rollins v. Massinari, 261 F.3d 853, 857 (9th Cir. 2001). This finding is

therefore affirmed.

### 2. Inconsistent Statements

The ALJ also found numerous inconsistencies in Ellis' statements throughout the record, and relied upon these inconsistencies in rejecting Ellis' symptom testimony. Tr. 20-21. The ALJ may cite such statements in assessing a claimant's testimony. Smolen, 80 F.3d at 1284.

####	a. Inconsistent Statements Regarding Activities of Daily Living and Work Activity

The ALJ first discussed Ellis' inconsistent statements regarding his activities of daily living to his healthcare providers, noting that Ellis reported that he could not perform any household chores, but also reported that he was "bored at home because he had already repaired everything he could and completely cleaned his home to no avail." Tr. 20. The record shows that on May 9, 2008, Ellis told Coos County Mental Health ("CCMH") counselor Cindy Bengtson that "he is getting bored being home all the time and has fixed everything around the house that is broken." Tr. 390. This finding is therefore affirmed.

The ALJ also discussed Ellis' work activity performed after his October 7, 2007, alleged onset date at several instances in his decision. Tr. 12, 15-16. The ALJ first found that this effort constituted "substantial gainful activity"[1] under the Commissioner's regulations, but also found that it did not occur throughout the adjudicatory period. Tr. 12. The ALJ subsequently referred to Ellis' report denying that he performed work activity after his alleged onset date (Tr. 15), and Ellis' work activity "while dealing with" his leg condition. Tr. 16.

---

[1]To constitute "substantial gainful activity," the activity must be substantial, involving significant physical or mental activities, even if done part-time or on a modified schedule. 20 C.F.R. § 404.1572(a). It must also be done for pay or profit. 20 C.F.R. § 404.1572(b).

8 - OPINION & ORDER

The record shows that Ellis consistently reported working at various endeavors to CCMH counselors throughout the period under review. Tr. 360, 367, 372, 390, 402-04, 412, 420, 423, 439, 441, 457-58, 506-07. The ALJ's finding that Ellis promulgated inconsistent reports regarding his work activity is based upon the record and therefore affirmed.

### b. Inconsistent Statements Regarding Medical Symptoms and Diagnoses

The ALJ also found that Ellis "reported symptoms to one provider, which he denied to another provider despite almost no time passing between the reports." Id. The ALJ provided no further description of this alleged inconsistency, provided no citation for this finding, and the Commissioner does not presently point to inconsistent reports separated by "almost no time passing." Def.'s Br. 6. This court cannot now determine what reports the ALJ referenced. The ALJ's finding must be based upon substantial evidence. Batson, 359 F.3d at 1193. Because this court cannot now make such a determination, this finding is rejected.

The ALJ noted that Ellis reported that he needed to recline throughout the day, but told Robert Gerber, M.D., that he "did best when he was active," and reported to CCMH counselors that he did not have enough to do at home. Tr. 21. The ALJ provided no citation for this statement to CCMH counselors, the Commissioner does not now point to such a statement in the record, and this court does not find it in the record. This finding is not supported by the record and therefore not affirmed.

Finally, the ALJ found that Ellis inconsistently reported facts pertaining to his medical record. Here the ALJ cited Ellis' report regarding the source of his leg injury and his alleged hepatitis C diagnosis. Tr. 21.

The record clearly shows that Ellis' 2006 leg injury was due to a third-degree cigarette burn,

9 - OPINION & ORDER

subsequent infection, skin grafts, additional infections, and surgery. Tr. 223-33, 315, 322. Ellis' report that he nearly lost his leg due a work accident contradicts this evidence. The ALJ's finding on this matter is therefore affirmed.

A report from treating physician Walter Hunter, M.D.,and CCMH records also indicate that Ellis carried a hepatitis C diagnosis. Tr. 319, 478, 519. Though the ALJ correctly stated that the record did not contain diagnostic tests pertaining to this alleged condition, the record does not support the ALJ's finding that Ellis inconsistently reported this diagnosis to the ALJ. This finding is therefore not affirmed.

### 3. Failure to Seek Treatment

The ALJ also found that Ellis failed to seek treatment pertaining to his alleged hepatitis C. Tr. 21. The ALJ subsequently stated that Ellis "alleged these [sic] were somehow related to his lack of motivation secondary to his mental health issues; however, he admitted that the work he performed after the alleged onset date was on time and up to par." Id.

Ellis challenges this reasoning. Pl.'s Opening Br. 16. Ellis is correct in his assertion that the ALJ's citation to his mental health and work history is tangential in reference to his hepatitis C. However, an ALJ may cite a claimant's failure to seek treatment in finding a claimant not credible. Smolen, 80 F.3d at 1284. The ALJ's initial finding on this matter, without reference to Ellis' mental health and work history, is therefore affirmed.

### 4. Unemployment Insurance

Finally, the ALJ's credibility analysis discussed Ellis' receipt of unemployment benefits. Tr. 21. The ALJ reasoned that Ellis represented himself as available for work, which contradicted his application for disability benefits. Id.

10 - OPINION & ORDER

Receipt of unemployment benefits may undermine a claimant's alleged inability to work full time. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (citing Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988)). This is because unemployment benefit applications may require that a claimant hold herself out as available for full time work. Copeland, 861 F.2d at 542.

Ellis asserts that Oregon law allows receipt of unemployment benefits if an individual is able to perform "some" work, which is consistent with the Social Security Administration's definition of disability based upon an individual's inability to perform full time work. Pl's Opening Br., 16. The Commissioner responds that Ellis in fact held himself out as unable to perform any work in conjunction with his disability application, and that this is inconsistent with Ellis' report that he could perform "some" work in seeking unemployment benefits. Def.'s Br. 7.

Ellis' unemployment benefits application is not in the record before this court. The record presently under review therefore does not establish the manner in which Ellis held himself available for work. In such circumstances, the court cannot determine that the claimant made an assertion regarding his availability for work, and an ALJ's inference on the matter does not constitute a clear and convincing reason for discrediting a claimant. Carmickle, 533 F.3d at 1162. The ALJ's finding on the matter is therefore not affirmed.

    C.    **Credibility Conclusion**

In summary, the ALJ's citation to Ellis' activities of daily living, inconsistent statements regarding his activities and work history, and failure to seek treatment are based upon the record and appropriate legal standards. This court may affirm an ALJ's overall credibility conclusion when not all of the ALJ's reasons are upheld. Batson, 359 F.3d at 1197. The ALJ's credibility conclusion is

therefore affirmed.

## II.     Medical Source Statements

Ellis alleges that the ALJ improperly evaluated the opinions of examining physician Raymond Nolan, M.D., and reviewing psychologist Dorothy Anderson, Ph.D.

### A.     Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1).  When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. Id. If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. Id. at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

### B.     Examining Physician Dr. Nolan

Ellis asserts that the ALJ failed to fully assess examining physician Dr. Nolan's opinion regarding his head and neck limitations. Pl.'s Opening Br. 17.

Dr. Nolan examined Ellis in conjunction with his disability application on May 10, 2008. Tr. 267-68. Dr. Nolan recorded Ellis' reported history pertaining to his back and neck impairments, and performed a clinical examination. Id. Dr. Nolan diagnosed "chronic back pain," with nonspecific radicular leg symptoms, and pointedly noted that an MRI study did not correlate this interpretation. Tr. 268. Dr. Nolan also diagnosed "chronic neck pain syndrome, status post fusion with limitation of range of motion and presentation compatible with cervical radiculopathy,

12 - OPINION & ORDER

specifically of the arm symptoms associated with lateral bending." Id. Dr. Nolan concurrently suggested work-related limitations:

> In reference to functional capabilities this man at this point would want to greatly minimize any bending, twisting and turning and limit lifting and carrying to no more than 20 pounds. He should avoid activities with frequent head and neck movement. He should be able to sit for about six hours in an eight-hour day, with opportunity for position changes, as needed for comfort. He should be able to stand and/or walk about two hours. His communication skills are adequate.
> Tr. 268.

The ALJ reiterated Dr. Nolan's clinical findings. Tr. 18. Regarding work restrictions, the ALJ discussed Dr. Nolan's lifting restrictions and suggestion that Ellis be allowed to change positions in the course of the day, and minimize bending, twisting, and turning. Id. The ALJ did not mention Dr. Nolan's restriction regarding "frequent head and neck movement." However, the ALJ later stated that he accepted all of Dr. Nolan's work-related restrictions. Tr. 21. Because the ALJ's RFC does not cite head and neck limitations (Tr. 14), the ALJ's cursory statement that he accepted all of Dr. Nolan's restrictions is inaccurate.

Neither Ellis nor the Commissioner address the effect of the ALJ's error regarding Dr. Nolan's head and neck limitations. Pl.'s Opening Br. 17; Def.'s Br. 11. The Commissioner instead points to Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). This citation addresses an ALJ's rejection of physician opinions predicated upon reports of a claimant found not credible. Id. (citing Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). While the ALJ found Ellis not credible (Tr. 21), he made no finding regarding Ellis' credibility and Dr. Nolan's opinion. This court cannot now rely upon reasoning the ALJ did not assert. Bray, 54 F.3d at 1225-26. The effect of the ALJ's omission regarding Dr. Nolan's restriction is discussed below.

///

13 - OPINION & ORDER

### C.     Reviewing Psychologist Dr. Anderson

Ellis also asserts that the ALJ failed to include all limitations assessed by reviewing psychologist Dorothy Anderson, Ph.D.  Pl.'s Opening Br. 18-19.

Dr. Anderson reviewed Ellis' medical records for Disability Determination Services ("DDS") on May 19, 2008.  Tr. 291-93.  Dr. Anderson assessed no limitations in Ellis' understanding and memory, ability to carry out simple instructions, perform activities within a schedule, sustain an ordinary routine without special supervision, make simple work-related decisions, sustain concentration and persistence, ask simple questions or ask for assistance, accept instructions and respond to workplace criticism, maintain socially appropriate behavior, and adapt appropriately to work situations.  Tr. 291-92.  Dr. Anderson found Ellis "moderately" limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with others without distraction, interact appropriately with the public, and get along with coworkers.  Id.

Following this analysis, Dr. Anderson wrote:

> Passive-aggressive/antisocial personality style, some distraction secondary to discomfort; [claimant] is capable of work in an environment with restricted/directed social interactions ([claimant] reports that he works best alone), no more than [occasional] contact with the general public, he will benefit from regular supervision to redirect him as necessary and ensure he remains on task.  Tr. 293.

The ALJ reiterated Dr. Anderson's limitations (Tr. 20), and stated that he accepted them.  Tr. 21.  Ellis now asserts that the ALJ erroneously omitted Dr. Anderson's opinion that he "would benefit from regular supervision to redirect him as necessary and ensure he remains on task."  Pl.'s Opening Br. 18-19.  Dr. Anderson did not restrict Ellis to a work environment with "regular

supervision;" she stated only that such an environment "will" be beneficial (Tr. 293) and that Ellis did not require "special" supervision. Tr. 291. A plain reading of this language does not establish that Dr. Anderson restricted Ellis to a work environment with "regular" supervision. Ellis therefore fails to establish reversible error regarding the ALJ's omission of this clause.

### III. Lay Testimony

Ellis also asserts that the ALJ erroneously evaluated lay testimony submitted by his girl friend, Sharon Burcher. Pl.'s Opening Br. 17-18.

#### A. Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3); Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. Bruce, 557 F.3d at 1115; Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).

#### B. Analysis

Sharon Burcher completed two "third party report" forms submitted to the record, on December 15, 2007, and August 23, 2008. Tr. 168-75; 197-204.

On her December 15, 2007 form, Burcher stated that Ellis cares for his dog and pet chicken, can no longer work or perform many activities, sometimes has trouble dressing himself, and "has problems with his leg" including circulation and putting on shoes and socks. Tr. 169. Burcher stated that Ellis can prepare "quick food," and cannot perform household chores due to back, knee, and leg

15 - OPINION & ORDER

impairments. Tr. 170-71. Ellis is unable to handle a checking or savings account. Tr. 171. His hobbies include watching movies, fishing, and "work on things." Tr. 172. Ellis must change positions "a lot" and fishing is "uncomfortable." Id. Burcher wrote that Ellis is antisocial, does not get along well with others, and "authority is a problem." Tr. 173. Finally, Burcher indicated limitations in Ellis' ability to lift, walk, climb stairs, squat, sit, bend, kneel, stand, and reach, and in talking, memory, completing tasks, concentration, following instructions, using his hands, and getting along with others. Tr. 173. Burcher stated that Ellis can walk five minutes, and that he does not follow written instructions. Tr. 173. He uses a sacroiliac joint belt. Tr. 174.

Burcher completed the same form a second time on August 23, 2008. Here she noted similar activities and limitations, and additionally stated that Ellis does not bathe on a regular basis, won't cook, must be asked whether he took his medication daily, will not "take the time" and cannot concentrate sufficiently to prepare meals, no longer "tinkers" with hobby projects, and cannot concentrate to watch a full movie. Tr. 198-201. Burcher again stated that Ellis "does not do well" with others, and additionally indicated limitations in seeing. Tr. 202. She also wrote that Ellis was fired from jobs because he would scream and yell during episodes associated with his bipolar disorder. Tr. 203. Finally, Burcher wrote that, as of August 2008, Ellis experiences more manic episodes due to his bipolar disorder, and additionally has diabetes and hepatitis C. Tr. 204.

The ALJ did not discuss Burcher's reported observations, but concluded that "Ms. Burcher's statements also lack credibility in that she has secondary gain motive behind supporting her live-in boyfriend's claim and the extent of limitations she alleged in her reporting has been directly contradicted by the claimant admittance of his real abilities and limitations. Her observations are given little, if any, weight." Tr. 21.

### 1. Secondary Gain

The ALJ may not reject lay testimony simply because the lay witness is an "interested party." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009). This is because lay witness testimony derives its value from the witness' observations of the claimant. Id. While an ALJ may reject lay testimony if he finds that the lay witness "exaggerated a claimant's symptoms *in order* to get access to his disability benefits, as opposed to being an "interested party" in the abstract," the ALJ must explain such findings. Id. (emphasis original). The ALJ presently articulated no such rationale. The ALJ's reasoning that Burcher's testimony should be rejected because Burcher lives with Ellis and therefore has a "secondary gain motive" is therefore not affirmed.

### 2. Claimant Credibility and Lay Testimony

The ALJ also rejected Burcher's testimony because he found it contradicted by Ellis' own testimony regarding his "real abilities and limitations." Tr. 21.

The ALJ's findings regarding Ellis' activities of daily living and inconsistent statements are based upon the record. Supra, 8-9. Ellis testified that he could perform some household chores, shop, barbecue, clean his house, bow hunt, and care for dogs and horses. Tr. 117-24, 263. Burcher testified that Ellis could not perform household chores, could walk only five minutes, and could not concentrate well enough to prepare meals. Tr. 199-202. The ALJ's subsequent rejection of Burcher's testimony, to the extent it contradicted Ellis' testimony regarding his activities of daily living, constitutes a sufficiently germane reason to reject Burcher's testimony. This finding is affirmed.

///

### 3. RFC Assessment and Lay Testimony

Finally, the Commissioner states that the ALJ accepted Ellis' limitations regarding his exertional restrictions expressed in his RFC. Def.'s Br. 9. The Commissioner subsequently asserts that the ALJ rejected Burcher's testimony "to the extent" she reported symptoms in excess of these limitations. Id.

The ALJ must consider lay witness testimony in assessing a claimant's RFC. 20 C.F.R. § 404.1545(a)(3). The Commissioner's assertion that the limitations accepted in Ellis' RFC assessment themselves constitute a sufficiently "germane" reason for rejecting Burcher's testimony is not sustained.

### C. Conclusion: Lay Testimony

In summary, while the ALJ erred in referring to Burcher's alleged secondary gain motive in rejecting her testimony, the ALJ's remaining findings regarding Burcher's testimony are adequately based upon the record. These findings are affirmed.

## IV. Remand

The ALJ erroneously evaluated Dr. Nolan's opinion regarding Ellis' head and neck limitations. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), (cert. denied, 531 US 1038 (2000)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Strauss v. Comm'r, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)). The court may

not award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act. Id. at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. Connett, 340 F3d at 876 (citing Bunnell, 947 F.2d at 348). The reviewing court declines to credit testimony when "outstanding issues" remain. Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ erred by failing to properly address Dr. Nolan's opinion. The ALJ's subsequent RFC assessment and hypothetical questions to the vocational expert at step five in the sequential disability analysis are therefore not based upon the proper legal standards.

However, it is not clear from the record that crediting the omitted evidence establishes that Clark is disabled at step five in the sequential proceedings. Neither the ALJ nor Ellis' counsel asked the vocational expert to address the effect of the additional head and neck limitations described by Dr. Nolan. This court therefore has no vocational expert testimony to credit as evidence supporting a finding of disability at step five in the sequential proceedings.

In such instances, award of benefits is inappropriate. Harman, 211 F.3d at 1180; see also Luna, 623 F.3d at 1035. The matter must be remanded for further proceedings to address Dr. Nolan's head and neck limitations and the lay witness testimony. The ALJ must also clarify the role

19 - OPINION & ORDER

of his finding that Ellis has "moderate" limitations in concentration, persistence, and pace (Tr. 14) upon Ellis' RFC. If necessary, the ALJ must then revise his RFC determination. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

## CONCLUSION

For these reasons, this court REVERSES the Commissioner's final decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion and order.

IT IS SO ORDERED.

Dated this   20th   day of October, 2011.

    /s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

20 - OPINION & ORDER